**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTHONY PENDOLINO, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 10 C 5916 |
| ) | |
| BAC HOME LOANS SERVICING, LP, ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony Pendolino brings this *pro se* complaint against Defendant Bank of America Corporation Home Loan Servicing, LP ("BAC"). Plaintiff alleges that Defendant and other unnamed banks and lending agencies participated in a fraudulent scheme to charge Plaintiff a number of unauthorized fees in connection with a home loan he received in March 2007. (Am. Compl. ¶ 13.) Plaintiff's original complaint alleged that an undefined group of "Lenders" engaged in an elaborate scheme to induce Plaintiff to take out a loan he could not afford. At the court's direction, Plaintiff filed his First Amended Complaint on October 15, 2010, again alleging a wide-ranging set of claims against Defendant BAC and other unnamed entities: breach of fiduciary duty; negligence; common law fraud; breach of the implied covenant of good faith and fair dealing; violations of the Truth in Leading Act (TILA), 15 U.S.C. §§ 1601, *et seq.*, and the Real Estate Settlement and Procedures Act (RESPA), §§12 U.S.C. 2601, *et seq.*; and intentional infliction of emotional distress.[1] Defendant moves to dismiss all claims under FED. R. CIV. P. 12(b)(6), and contends that Plaintiff has pleaded no specific allegations against BAC, but rather, attempts to impute the acts of its sister corporation,

---

[1] As Defendant has observed, both Plaintiff's First Amended Complaint and his Response to Defendant's Motion to Dismiss appear copied from other such materials filed by *pro se* litigants against BAC throughout the country. (Exs. A, B, D, G to Def.'s Reply in Supp. of its Mot. To Dismiss Pl.'s First Am. Compl.)

Countrywide Home Loans, Inc., to BAC.[2]  For reasons explained below, the motion is granted.

## FACTUAL BACKGROUND

Assessing the precise allegations in Plaintiff's First Amended Complaint is challenging. Plaintiff offers few details concerning the circumstances under which he secured his home loan, and frequently makes reference to a "Lender" or set of "Lenders," though Bank of America Home Loan Servicing, LP ("BAC") is the only named Defendant.  As best the court can determine, on March 14, 2007, Plaintiff secured a loan from Countrywide Home Loans, Inc. to purchase a home located at 615 N. Brainard Street in Chicago, Illinois.  (Am. Compl. ¶ 4.)  The loan agreement consisted of a promissory note, a lien document, and a rider entitled, "Notice of Right to Cancel," confirming Plaintiff's right to cancel the loan within three business days from closing.  (Ex. A. to Def.'s Mem. in Supp. of its Mot. to Dismiss Pl.'s First Am. Compl. (hereinafter, "Def.'s Mem.")). Plaintiff does not state the precise closing date for the real estate purchase, but claims that at closing time, an unidentified agent from the Chicago Title Insurance Company provided him with a Truth in Lending Statement and a Housing and Urban Development Form 1.  Plaintiff claims the form listed a host of fees totaling $553,813.15 for expenses such as the loan discount, appraisal fee and reinspection fee.  (Am. Compl. ¶ 5.)  The record does not reflect the precise loan amount, the interest rate, or the amount of Plaintiff's monthly payment, but according to Plaintiff, the $553,813.15 amount was added to the principal on the note and Plaintiff was charged interest on the fees.  (Am. Compl. ¶¶ 5-6.)

Plaintiff's First Amended Complaint consistently refers to Countrywide Home Loans, Inc. as the "Lender" in the above described transaction, though he acknowledges that at some point after

---

[2]  Countrywide Home Loans, Inc. is a New York corporation with its principal place of business in California; BAC Home Loans Servicing is a Texas limited partnership with its principal place of business in Texas.  Both entities are owned by Bank of America Corporation, which is a Delaware Corporation with its principal place of business in North Carolina.  The court may take judicial notice of such matters in the public record in resolving a motion to dismiss.  *See Palay v. United States*, 349 F.3d 418, 425 n. 5 (7th Cir. 2003) *and cases cited therein*.

he signed the loan contract, the note was assigned to BAC.[3] (Am. Compl. ¶¶ 68-69.) Plaintiff does not state when he became delinquent on his mortgage payments, but claims that BAC wrongfully attempted (or is currently attempting) to foreclose on his home.[4] (Am. Compl. ¶¶ 104-05.) In this lawsuit, Plaintiff contends that the massive fees described on the HUD disclosure form were fraudulently assessed with the specific intent to cause Plaintiff to default on his loan payments. (Am. Compl. ¶¶ 10-11.) As a result, Plaintiff brought this action against BAC, alleging seven causes of action: (1) breach of fiduciary duty; (2) negligence; (3) common law fraud; (4) breach of the implied covenant of good faith and fair dealing; (5) violations of the Truth in Leading Act (TILA), 15 U.S.C. § 1601 *et seq.*, and (6) the Real Estate Settlement and Procedures Act (RESPA), §12 U.S.C. 2601 *et seq.*; and (7) intentional infliction of emotional distress.

## **ANALYSIS**

On a motion to dismiss, the court accepts Plaintiff's allegations as true and draws all reasonable inferences in Plaintiff's favor. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). A complaint need not include detailed factual allegations, but must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Although the bar to survive a motion to dismiss is not high, the complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted)). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 129 S. Ct at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In this case, the heightened

---

[3] Though neither party has explained precisely when this assignment occurred, the court assumes the note was assigned some time after Bank of America Corporation acquired Countrywide Financial Corporation in July 2008. *See* Bank of America Merger History, http://message.bankofamerica.com/heritage/#/merger-history/country-financial (last visited July 22, 2011).

[4] Whether Plaintiff remains in his home is unclear, as neither party explains whether a state foreclosure action has been initiated.

pleading standards of Federal Rule of Civil Procedure 9(b) must also apply because Plaintiff's complaint alleges common law fraud. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). In other words, a plaintiff must state "'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997)).

As a threshold matter, BAC claims that Plaintiff's claims must be dismissed because Plaintiff has not asserted any allegations specifically against BAC, but rather, seeks to hold BAC liable for the alleged acts of its sister corporation Countrywide Home Loans, Inc., and other corporations that Plaintiff defines as "Lenders" in the body of the complaint. Defendant correctly notes that as a general rule, a parent corporation may not be held to account for the liability of a subsidiary. Instead, to impose liability on one corporate entity for the acts of another, a plaintiff must show that (1) there is "such unity of interest and ownership that the separate personalities of the [corporations] no longer exist;" and (2) the circumstances are "such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985). In this case, Bank of America Corporation, the parent company of BAC, acquired Countrywide Home Loans, Inc. in 2008, and a separate entity, Countrywide Home Loans Servicing, LP, changed its name to Bank of America Corporation Home Loans Servicing, LP—the named Defendant. (Def.'s Mem. at 4.) The court agrees with Defendant that Plaintiff has not sufficiently explained the relationship between BAC and Countrywide Home Loans, Inc. In the court's view, however, it is conceivable that Plaintiff merely named the wrong Countrywide-affiliated entity in the complaint and should have instead named

4

Countrywide Home Loans Serving, LP, which is now the same entity as Defendant BAC.[5]  Given the possibility of this typographical mistake, and recognizing the court's duty to liberally construe a *pro se* litigant's complaint, *Byers v. Basinger*, 610 F.3d 980, 986 (7th Cir. 2010), the court will not grant Defendant's motion to dismiss the Plaintiff's complaint in its entirety on this ground, and instead will proceed to address the adequacy of the pleadings.

**I.     TILA claim**

Plaintiff claims that the Defendant violated Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.* because the "Lenders" failed to "[c]orrectly identify the transaction" and "[c]learly and conspicuously disclose the Plaintiff's right to rescind the transaction three days after delivery of all required disclosures."[6] (Am. Compl. ¶ 114.) Defendant argues that Plaintiff's TILA claim must be dismissed because the "Notice of Right to Cancel," which accompanied his loan contract (and Plaintiff signed), states explicitly that the right to cancel the transaction would expire on March 17, 2007, three days after he signed the contract.  Defendant argues, further, that Plaintiff's right to rescission has expired under the statute.  Under TILA, a borrower has "the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms," and rescission claims "expire three years after the date of the consummation of the transaction or upon the sale of the property, whichever occurs first."  15 U.S.C. § 1635(a), (f); *see also Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998) (section 1635(f) "completely extinguishes the right of rescission at the end of the 3-year period.")  The court agrees any TILA claim Plaintiff might seek to pursue is time-barred by the statute.  Plaintiff executed the promissory note on March 14, 2007, but this action was not filed until September 17, 2010, well past the 3-year period for bringing a TILA rescission claim.  *See Stewart*

---

[5]     The court's construction of Plaintiff's complaint is supported, further, by Plaintiff's allegation that "Lender became the servicer of the note."  (Am. Compl. ¶ 9.)

[6]     The record does not reflect whether Plaintiff actually attempted to rescind the loan.

5

*v. BAC Home Loans Servicing, LP*, No. 10 C 2033, 2011 WL 862938, at *4 (N.D. Ill. March 10, 2011). Accordingly, Plaintiff's loan rescission claim under TILA is dismissed.

**II.  RESPA**

It is difficult to discern the nature of Plaintiff's claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*, but Plaintiff's RESPA allegations appear to be somehow connected to his negligence claim. (Am. Compl. ¶¶ 93-98.) "RESPA is a consumer protection statute that regulates the real estate settlement process . . . [and] imposes a number of duties on lenders and loan servicers." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011). Under 12 U.S.C. § 2605, borrowers must be notified "in writing of any assignment, sale, or transfer of the servicing of the loan to any other person," and must respond to written requests "from the borrower . . . for information relating to the servicing of the loan . . . within 20 days . . . ." 12 U.S.C. § 2605(b), (e). Though Plaintiff does not specifically identify the provision(s) of the statute under which he seeks relief, Defendant points out that claims under 12 U.S.C. § 2605 are subject to a three-year statute of limitations period from the date of the occurrence of the violation. 12 U.S.C. § 2614. As previously noted, the Plaintiff's loan closed on March 14, 2007, and Plaintiff did not file this action until three years later in September 2010. Plaintiff has not pleaded any facts that would support a tolling the statute of limitations, *see Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 900 (N.D. Ill. 2009) (alleged fraudulent concealment did not toll the statute of limitations under RESPA); therefore, Plaintiff's RESPA claim is dismissed.

**III.  State law claims**

Plaintiff's remaining claims are brought under Illinois law. The court initially directed Plaintiff to identify the source of the court's jurisdiction in this case, as Plaintiff's initial complaint did not make clear whether Plaintiff had stated a claim under federal law or whether the members of Defendant BAC were all diverse in citizenship from Plaintiff. [Doc. No. 7.] Plaintiff's Amended Complaint asserts that the court has federal question jurisdiction over this case because Plaintiff

alleges claims for violations of TILA and RESPA. (Am. Comp. ¶ 2.) He has not addressed the matter of diversity, but the court's independent research suggests this may be a basis for the court's exercise of jurisdiction. *See supra* n. 2. The court therefore proceeds to address the state law claims.

### A.     Breach of Fiduciary Duty and Negligence

In order to state a claim for negligence, Plaintiff must allege that BAC owed him a duty of care, that BAC breached that duty, and that Plaintiff's injury was proximately caused by BAC's breach. *LaSalle Bank Nat'l Assoc v. Paramont Properties*, 588 F. Supp. 2d 840, 851 (N.D. Ill. 2008) (*citing Adams v. N. Ill. Gas Co.*, 211 Ill.2d 32, 43, 809 N.E.2d 1248, 1257 (2004)). Plaintiff claims that the "Lenders" had a duty to "refrain from marketing loans they knew or should have known that the borrowers could not afford or maintain . . . ." (Am. Compl. ¶ 95.) Defendant contends that Plaintiff's negligence and breach of fiduciary duty claims must be dismissed because there is no general duty of care between a lender and a borrower. Indeed, under Illinois law, a lender "has no duty to refrain from making a loan if the lender knows or should know that the borrower cannot repay the loan." *N. Trust Co. v. VIII S. Michigan Associates*, 276 Ill. App. 3d 355, 364, 657 N.E.2d 1095, 1102 (1st Dist. 1995). Because BAC owed Plaintiff no duty of care under Illinois law, the court agrees that Plaintiff has failed to state a claim for negligence and breach of fiduciary duty.

### B.     Common Law Fraud

In order to state a claim for fraud, a plaintiff must show that (1) the defendant made a false statement of material fact; (2) which the defendant knew or believed to be false; (3) with the intent to induce plaintiff to act; (4) plaintiff justifiably relied upon the truth of the statement; and (5) he suffered damage from such reliance. *Soules v. Gen. Motors Corp.*, 79 Ill. 2d 282, 286, 402 N.E.2d 599, 601 (1980). BAC contends that Plaintiff has failed to allege the elements of fraud with particularity as required by FED. R. CIV. P. 9(b), and attempts to attribute the wrongful acts of other unnamed corporations to BAC. The court agrees that Plaintiff has not met his burden under Rule

9(b). Plaintiff's amended complaint asserts a wide-ranging set of allegations against a group of undefined "Lenders," but fails to specifically address "'what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made.'" *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 771, 863 N.E.2d 1156, 1167 (Ill. App. 2 Dist. 2007) (quoting *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496-97, 675 N.E.2d 584, 591 (1996)); *see also Elias v. Stewart Title of Illinois*, No. 9 C 6773, 2011 WL 1157534, at *2 (N.D. Ill. 2011) (dismissing plaintiff's fraud claims where complaint "failed to describe the role each defendant played in the alleged fraud.").

If Plaintiff's lender added more than $500,000 in unexplained fees to a mortgage loan on a residential property, its conduct could undoubtedly be questioned. Defendant BAC insists Plaintiff has sued the wrong party, but has not otherwise offered any explanation for the alleged massive fee. That said, Plaintiff's allegations are insufficient to support a fraud claim. The fraud claim is dismissed.

### C.     Breach of Implied Covenant of Good Faith and Fair Dealing

According to Defendant, Plaintiff's claim for "breach of implied covenant of good faith and fair dealing" should be dismissed because the implied covenant is not recognized in Illinois as an independent tort. (Def.'s Mem. at 10.) Though the Illinois courts do recognize "an obligation of good faith in the performance of all contracts," Illinois law does not recognize "independent claims based on breaches of any implied duties of good faith." *Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1105-06 (7th Cir. 1997) (citing 810 ILCS 5/1-203; *Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995); *Korogluyan v. Chicago Title and Trust Co.*, 213 Ill. App. 3d 622, 631, 572 N.E.2d 1154, 1161 (1st Dist. 1991)). Plaintiff has not identified any specific contractual provision that Defendant allegedly breached. His claim for breach of the implied covenant of good faith and fair dealing is therefore dismissed.

### D.     Intentional Infliction of Emotional Distress

Plaintiff claims that the "'Lenders' either knew that their conduct would cause Plaintiff to suffer severe emotional distress, or acted in conscious and/or reckless disregard of the probability that such distress would occur." (Am. Compl. ¶ 118.) In order to state a claim for intentional infliction of emotional distress ("IIED") under Illinois law, a plaintiff must allege that "(1) the defendant's conduct was extreme and outrageous; (2) the defendant intended that his conduct inflict severe emotional distress, or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the conduct actually caused severe emotional distress." *Whitley*, 607 F. Supp. 2d at 903 (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). To support a claim for IIED, "the defendant's conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Hukic v. Aurora Loan Services*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 21, 607 N.E.2d 201, 211 (1992)). In *Hukic*, the Seventh Circuit affirmed the district court's dismissal of a mortgagor's IIED claim where the loan servicer mistakenly reported his loan as delinquent to consumer reporting agencies. *Hukic*, 588 F.3d at 439 (finding defendant's conduct did not rise to the level of "extreme and outrageous"). Here, as far as the court can tell, BAC merely foreclosed (or attempted to foreclose) on his home after Plaintiff was unable (or refused) to make his monthly loan payments. In the court's view, Plaintiff has not alleged any other facts from which the could infer Defendant's actions rose to the level of "extreme and outrageous" conduct. As result, Plaintiff's IIED claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss [19] is granted.

ENTER:

*[signature: Rebecca R. Pallmeyer]*

9

Dated:  July 22, 2011                                   _____
                                                        REBECCA R. PALLMEYER
                                                        United States District Judge